[Cite as *Gamble v. Gamble*, 2025-Ohio-2381.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

KAREN A. GAMBLE NKA SMITH,      :

    Appellant,         :         CASE NO. CA2024-09-069

                         :            <u>OPINION AND</u>
    - vs -                            <u>JUDGMENT ENTRY</u>
                         :              7/7/2025

GARY C. GAMBLE III,            :

    Appellee.             :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2013 DRA 00478

Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellant.

Gary C. Gamble III, pro se.

**O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant, Karen A. Gamble nka Smith ("Mother"), appeals from a decision issued by the Clermont County Court of Common Pleas, Domestic Relations Division, following her divorce from appellee, Gary C. Gamble III ("Father"). For the reasons outlined below, we affirm the domestic relations court's decision in part, reverse the

domestic relations court's decision in part, and remand this matter to the domestic relations court for further proceedings. We additionally deny Mother's motion to strike Father's appellee brief, grant Mother's request for sanctions, and refer the determination of the appropriate and reasonable amount of sanctions to this court's magistrate.

**Facts and Procedural History**

{¶ 2} On August 8, 2008, Mother and Father were married in Covington, Kentucky. There was one child born issue of the marriage, L.G., born on March 6, 2009. On April 17, 2013, Mother filed for divorce from Father. The following year, on August 20, 2014, the domestic relations court issued a decree of divorce terminating Mother's and Father's marriage. The decree designated Mother as L.G.'s sole residential parent and legal custodian and ordered Father, as L.G.'s nonresidential parent, to pay child support to Mother in the amount of $1,012.72 per month. Father's child support obligation was subsequently reduced to $319.89 per month on August 25, 2022.

{¶ 3} On May 19, 2023, Father filed a motion to reallocate his and Mother's parental rights and responsibilities. Father also filed a motion to modify his monthly child support obligation. Later that year, on August 18, 2023, Mother filed a motion for contempt against Father. To support her motion, Mother alleged that Father had failed to pay child support and other expenses related to L.G. Approximately four months later, on December 13 and 14, 2023, the domestic relations court held a two-day hearing on Mother's and Father's motions. The hearing was presided over by a domestic relations court magistrate. During this hearing, the magistrate heard testimony and took evidence from both Mother and Father.

{¶ 4} On February 20, 2024, the magistrate issued a decision on Mother's and Father's motions. The magistrate's decision was thereafter amended on February 22, 2024. The magistrate's decision retained Mother as L.G.'s sole residential parent and

legal custodian and Father as L.G.'s nonresidential parent. However, despite the plain language set forth in R.C. 3119.07(A), the magistrate's decision ordered Mother, as L.G.'s sole residential parent and legal custodian, to pay child support to Father, L.G.'s nonresidential parent, in the amount of $906.88 per month. The magistrate's decision also allowed Father, upon finding Father in contempt for failing to pay child support and other expenses related to L.G., to make monthly payments towards the amount he was ordered to pay Mother as a purge condition rather than mandating Father make an immediate lump sum payment to Mother.

**{¶ 5}** On February 26, 2024, Mother filed objections to the magistrate's decision. This included Mother objecting to the magistrate ordering her, as L.G.'s sole residential parent and legal custodian, to pay monthly child support to Father, L.G.'s nonresidential parent, pursuant to the plain language set forth in R.C. 3119.07(A). Mother also objected to the magistrate allowing Father, upon finding Father in contempt for failing to pay child support and other expenses related to L.G., to make monthly payments towards the amount he was ordered to pay Mother as a purge condition rather than mandating Father make an immediate lump sum payment to Mother.

**{¶ 6}** On September 9, 2024, the domestic relations court issued a decision and entry denying Mother's objections to the magistrate's decision. As part of that decision, and when denying Mother's objection to the magistrate decision ordering her to pay child support to Father, the domestic relations court found unpersuasive Mother's argument that it was not in L.G.'s best interest to order her to pay child support to Father because "there was a long history of [Father] not providing financially for [L.G.] as ordered by the Court." In so doing, the domestic relations court determined that Mother's argument against ordering her to pay child support to Father in actuality "demonstrate[d] Father's need for support," because, "[p]resumably, by receiving child support, Father will be in a

- 3 -

better position to support [L.G.] financially and comply with court orders."

{¶ 7}  On September 17, 2024, Mother filed a notice of appeal from the domestic relations court's decision. Pursuant to this court's scheduling order, Mother filed her appellant brief on November 18, 2024. Father, upon receiving two extensions of time, filed his appellee brief on February 26, 2025. Mother then filed her reply brief on March 20, 2025. Five days later, on March 25, 2025, Mother moved to strike Father's appellee brief and requested sanctions be levied against Father. To support her motion and request for sanctions, Mother argued that several of the cases cited by Father within his appellee brief were "fraudulent" because the "case cites and the arguments related thereto were either not accurate, non-existent or completely false."

{¶ 8}  On May 15, 2025, this court issued an entry directing Father to provide us with copies of the cases he had cited within his appellee brief that Mother alleged were "fraudulent" and that this court was unable to locate after an extensive search. This included the apparent nonexistent cases and inappropriate, inaccurate citations to legal authority otherwise unsubstantiated. Such examples, among others, being (1) *Stumpf v. Stumpf*, 2020-Ohio-428 (12th Dist.); (2) *Baird v. Baird*, 2019-Ohio-263 (12th Dist.); (3) *Morris v. Morris*, 2017-Ohio-7389 (12th Dist.); and (4) *Patterson v. Patterson*, 2013-Ohio-4988 (12th Dist.). Father was to respond to this court's entry on or before June 2, 2025. Father, however, did not file any response to this court's directive, thereby forfeiting an opportunity to produce the cases and citations in question.

{¶ 9}  On June 4, 2025, Mother's appeal was submitted to this court for consideration. Mother's appeal now properly before this court for decision, Mother has raised four assignments of error for review.

**Mother's Assignment of Error No. 1:**

{¶ 10} THE TRIAL COURT ABUSED ITS DISCRETION BY DESIGNATING

- 4 -

APPELLANT THE CHILD SUPPORT OBLIGOR WHEN SHE IS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILD.

{¶ 11} In her first assignment of error, Mother argues the trial court erred by ordering her, as L.G.'s sole residential parent and legal custodian, to pay monthly child support to Father, L.G.'s nonresidential parent, pursuant to the plain language set forth in R.C. 3119.07(A). We agree.

{¶ 12} R.C. 3119.07(A) provides that, except when the parents have split parental rights and responsibilities,

> a parent's child support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and shall not become part of a child support order, and a parent's child support obligation for a child for whom the parent is not the residential parent and legal custodian shall become part of a child support order.

{¶ 13} "'Under a plain reading of R.C. 3119.07(A), there is a clear presumption that the legal custodian and residential parent's child-support obligation is spent on that child and does not become part of a child-support order where the parties do not have split parental rights and responsibilities.'" *Hensley v. Hensley*, 2024-Ohio-5751, ¶ 8 (12th Dist.), quoting *France v. France*, 2011-Ohio-3025, ¶ 16 (1st Dist.). That is to say, "'by operation of statute, in sole custody arrangements, the parent designated the residential parent and legal custodian is the child support obligee, i.e., the parent who receives the child support payments, and the parent not designated the residential parent and legal custodian is the child support obligor, i.e., the parent who must pay child support.'" *Id.*, quoting *Ash v. Dean*, 2016-Ohio-5589, ¶ 33 (10th Dist.); *Macknight v. Macknight*, 2022-Ohio-648, ¶ 28 (12th Dist.) (noting that, "[i]n situations where one parent is the sole residential parent, R.C. 3119.07[A] provides that the nonresidential parent shall be named the child support obligor").

{¶ 14} Given the plain language of R.C. 3119.07(A), there is only one stated exception to this rule. That is, when the parents have split parental rights and responsibilities. "Split parental rights and responsibilities" applies in split custody cases where "there is more than one child who is the subject of an allocation of parental rights and responsibilities and each parent is the residential parent and legal custodian of at least one of those children." R.C. 3119.01(C)(22). In this case, however, there is no dispute that Mother and Father do not have split parental rights and responsibilities, nor do Mother and Father have a shared parenting plan as it relates to their child, L.G. There is also no dispute that the domestic relations court designated Mother as the sole residential parent and legal custodian of L.G., whereas Father was designated as L.G.'s nonresidential parent. Consequently, pursuant to the plain language set forth in R.C. 3119.07(A), the domestic relations court was required to presume that Mother's child-support obligation was spent on L.G. as part of her daily spending. *Hensley* at ¶ 9, citing *France* at ¶ 17.

{¶ 15} As noted above, there is no stated exception to this rule other than when the parents have split parental rights and responsibilities. To hold otherwise, as the domestic relations court did in this case, added an unwritten exception to the plain and unambiguous language set forth within the statute. *See Clermont Cty. Transp. Improvement Dist. v. Gator Milford, LLC*, 2015-Ohio-241, ¶ 6. But, as is well established, "[w]hen the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said and apply it as written." (Internal citations deleted.) *State v. Gwynne*, 2023-Ohio-3851, ¶ 8. Therefore, under a plain reading of the statute, R.C. 3119.07(A), it was error for the domestic relations court to designate Mother, as L.G.'s sole residential parent and legal custodian, the child support obligor and order her to pay monthly child support to Father, L.G.'s

nonresidential parent. *Hensley*, 2024-Ohio-5751. Father should have instead been considered the child support obligor and Mother as the child support obligee. *Id.*, citing *France*, 2011-Ohio-3025 at ¶ 17, 21; and *Ash*, 2016-Ohio-5589 at ¶ 34.

{¶ 16} In so holding, we note that the domestic relations court relied on four cases issued by the Third, Sixth, and Tenth District Courts of Appeal as authority allowing it to order Mother, as L.G.'s sole residential parent and legal custodian, to pay monthly child support to Father, L.G.'s nonresidential parent, upon finding Mother and Father enjoyed equal parenting time with L.G. and that the order was in L.G.'s best interest. The cases relied on by the domestic relations court for this proposition were (1) *Frey v. Frey*, 2007-Ohio-2991 (3d Dist.); (2) *Prusia v. Prusia*, 2003-Ohio-2000 (6th Dist.); (3) *Bigelow v. Bigelow*, 2014-Ohio-994 (6th Dist.); and (4) *Warren v. Warren*, 2009-Ohio-6567 (10th Dist.). However, neither *Prusia* nor *Bigelow* nor *Warren* analyze, apply, or cite R.C. 3119.07(A) within the body of their opinions. The *Prusia*, *Bigelow*, and *Warren* decisions issued by the Sixth and Tenth District Courts of Appeal are therefore not persuasive. *See Hensley* at ¶ 10 (finding neither *Prusia* nor *Bigelow* persuasive given their failure to analyze, apply, or cite R.C. 3119.07[A] when addressing this same issue).

{¶ 17} Moreover, while *Frey* cites R.C. 3119.07(A) within the body of its opinion, it neither analyzes nor applies the statute to its facts. For this reason, the *Frey* decision issued by the Third District Court of Appeals is also not persuasive. *See Hensley*. What is persuasive is the plain language set forth in R.C. 3119.07(A), which, as stated previously, creates "'a clear presumption that the legal custodian and residential parent's child-support obligation is spent on that child and does not become part of a child-support order where the parties do not have split parental rights and responsibilities.'" *Id.*, 2024-Ohio-5751 at ¶ 8, quoting *France*, 2011-Ohio-3025 at ¶ 16. Therefore, for the reasons set forth above, and finding merit to Mother's argument set forth herein, Mother's first

assignment of error is sustained.[1] Accordingly, having now sustained Mother's first assignment of error, the trial court's decision ordering Mother, as L.G.'s sole residential parent and legal custodian, to pay monthly child support to Father, L.G.'s nonresidential parent, is reversed.

**Mother's Assignment of Error No. 2:**

{¶ 18} THE TRIAL COURT ABUSED ITS DISCRETION IN ISSUING THE CHILD SUPPORT ORDER AND PAYMENT OF CHILD RELATED EXPENSES IT DID IN ITS DECISION.

**Mother's Assignment of Error No. 3:**

{¶ 19} THE TRIAL COURT ERRED BY NOT ORDERING A SETOFF OF APPELLANT'S CHILD SUPPORT OBLIGATION AGAINST APPELLEE'S CHILD SUPPORT ARREARAGE.

{¶ 20} In her second and third assignments of error, Mother argues the trial court erred by ordering her to pay $906.88 in monthly child support to Father and by not ordering a setoff of Mother's monthly child support obligation against Father's child support arrearage. However, given our holding regarding Mother's first assignment of error set forth above, Mother's second and third assignments of error have been rendered moot and need not be addressed by this court. Pursuant to App.R. 12(A)(1)(c), "[u]nless an assignment of error is made moot by a ruling on another assignment of error," this

---

1. As noted above, the domestic relations court, when denying Mother's objection to the magistrate's decision ordering her to pay child support to Father, reasoned that it was in L.G.'s best interest to order Mother pay child support to Father because Father had failed to pay his child support in the past, thus insinuating that Father was in need of Mother's financial assistance. We question the validity of this reasoning. Nevertheless, while we do question the validity of such reasoning, in sustaining Mother's assignment of error, we need not address that portion of the domestic relations court's decision here. Suffice it to say that, as has been well established, "child support is for the benefit of the child, not the parent." *Hock v. Soles*, 2022-Ohio-3531, ¶ 23 (7th Dist.); *see, e.g., Blair v. Adkins*, 2021-Ohio-2292, ¶ 18 (12th Dist.) (juvenile court did not abuse its discretion by finding it would not be in a child's best interest to reduce an incarcerated father's child support obligation to $0 per month where father's arguments against ordering him to pay monthly child support while he served out a lengthy prison sentence were "based solely on what [the father] believes would be best *for him*, not on what would be in the best interest of *the child* at issue").

court shall "decide each assignment of error and give reasons in writing for its decision." "An assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court." *Sweitzer v. 56 Auto Sales*, 2023-Ohio-2997, ¶ 9 (12th Dist.). "That is to say, an issue becomes moot when it presents only a hypothetical or academic question, and a judicial resolution of the issue would have no practical significance." *W. Environmental Corp. of Ohio v. Hardy Diagnostics*, 2024-Ohio-3051, ¶ 34 (12th Dist.), citing *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55. Therefore, in accordance with App.R. 12(A)(1)(c), Mother's second and third assignments of error are moot.

**Mother's Assignment of Error No. 4:**

{¶ 21} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ISSUE PURGE CONDITIONS FOR THE BENEFIT OF APPELLANT WHEN APPELLEE WAS FOUND IN CONTEMPT.

{¶ 22} In her fourth assignment of error, Mother argues the domestic relations court erred by allowing Father, upon finding Father in contempt for failing to pay child support and other expenses related to L.G., to make monthly payments towards the amount he was ordered to pay Mother as a purge condition rather than mandating Father make an immediate lump sum payment to Mother. We disagree.

{¶ 23} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 2013-Ohio-2397, ¶ 11 (12th Dist.). "When reviewing a finding of contempt, including a trial court's imposition of penalties, an appellate court applies an abuse of discretion standard." *Mackowiak v. Mackowiak*, 2011-Ohio-3013, ¶ 45 (12th Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Maloney v. Maloney*, 2016-Ohio-7837, ¶ 14 (12th Dist.). "A decision is 'unreasonable' when there is no sound reasoning process to support it." *Vaughn v.*

*Vaughn*, 2007-Ohio-6569, ¶ 12 (12th Dist.). "'An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard.'" *Dickenson v. Jackson*, 2024-Ohio-1236, ¶ 19 (12th Dist.), quoting *Crawford v. Fisher*, 2015-Ohio-114, ¶ 5 (10th Dist.). "An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness." *Schaible v. Schaible*, 2025-Ohio-1404, ¶ 9 (12th Dist.).

{¶ 24} Mother argues that the domestic relations court allowing Father, as a purge condition, to make monthly payments towards the amount he was ordered to pay Mother rather than immediately paying Mother a lump sum payment was an abuse of discretion and "not in line with the purpose of a contempt finding, which is for the benefit of the complaining party rather than the contemnor." However, upon a thorough review of the record, we find nothing unreasonable, arbitrary, or unconscionable about the domestic relations court's decision. The domestic relations court's decision is instead fully supported by the record. The fact that Mother may have to wait a few months longer than what she would like to be fully reimbursed by Father does not render the domestic relations court's decision an abuse of discretion. Therefore, finding no abuse of discretion in the domestic relations court's decision allowing Father, as a purge condition, to make monthly payments towards the amount he was ordered to pay Mother rather than immediately paying Mother a lump sum payment, Mother's fourth assignment of error lacks merit and is overruled.

### Mother's Motion to Strike and Request for Sanctions

{¶ 25} Mother has moved this court to strike Father's appellee brief from the record as a sanction for him citing within his brief several phantom cases and inappropriate, inaccurate citations. To support this claim, Mother cites this court's Loc.App.R. 11(G). However, while we may agree that this court's local rules provide the authority necessary

for this court to strike Father's brief under these circumstances, upon review of the record properly before this court, and when considering Father's improper briefing was part of an appellee brief as opposed to an appellant brief, original action, or motion, Mother's motion to strike Father's brief is not well taken. Rather than striking Father's brief, this court has instead afforded Father's brief, and the arguments contained therein, with the appropriate weight, if any, that we deemed necessary to address and properly rule on Mother's four assignments of error set forth above. Therefore, for these reasons, Mother's motion to strike Father's appellee brief is denied.

{¶ 26} Mother has also requested this court order Father to pay as a sanction for the time and expense it took her to discover Father had cited to phantom cases within his appellee brief and bringing that matter to this court's attention. This court may impose sanctions against a party as a valid exercise of its inherent authority to sanction a party "where that party's conduct thwarts the administration of justice, disobeys court orders, abuses the judicial process, or when it is otherwise necessary for the administration of justice and protection of judicial powers and processes." *DiCuccio v. Lindsmith*, 2018-Ohio-2320, ¶ 30 (10th Dist.). This includes circumstances where a party has submitted a brief like the one that Father filed with this court. *See, e.g., Gonzalez v. Tex. Taxpayers & Research Assoc.*, 2025 U.S. Dist. LEXIS 16801 (W.D.Tex.) (Jan. 29, 2025) (federal district court exercising its inherent authority to sanction a party that submitted a brief exhibiting the hallmarks of a brief generated by artificial intelligence that included nonexistent cases, miscited cases, and cases that were real but stood for different legal propositions than what was represented).

{¶ 27} In this case, given Father's failure to respond to this court's order directing him to provide us with copies of the cases he cited to within his appellee brief that Mother alleged were "fraudulent" and that this court was unable to locate, we find it clear that

Father used nonexistent cases and inappropriate, inaccurate citations to generate his response to Mother's brief. Therefore, given this court's ability to impose sanctions in circumstances such as these, Mother's request for this court to order Father pay sanctions is granted. *See, e.g., Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, 2025 U.S. Dist. LEXIS 98418 (S.D.Fla) (May 20, 2025) (federal district court finding sanctions were appropriate against counsel for "submitting a fake hallucinated case citation which allegedly supported a principle of law for which they were advocating" given the court's "inherent authority to manage its own affairs and achieve the orderly and expeditious disposition of cases").

**{¶ 28}** For the reasons outlined above, Mother is entitled to the expenses and costs—including reasonable attorney fees—for the time and expense it took her to discover Father had cited to nonexistent cases within his appellee brief and bring that matter to this court's attention. This would include, for example, the expenses, costs, and attorney fees necessary for Mother to research, draft, and file her request for sanctions against Father. Accordingly, finding Mother's request for sanctions against Father well taken, we refer this matter to a magistrate to determine the proper amount of sanctions that Father should be ordered to pay in this case.

**{¶ 29}** Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON, P.J., and BYRNE, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed in part, reversed in part, and remanded for further proceedings, consistent with the above Opinion.

It is further ordered that appellant's March 25, 2025 combined Motion to Strike Appellee's Brief and Motion for Sanctions is denied to the extent it requests that appellee's brief be stricken. The motion is granted as to the request for, and the court hereby awards, sanctions against appellee consistent with the above Opinion and refers the matter to a magistrate to determine the extent and amount of sanctions.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Domestic Relations Division for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Matthew R. Byrne, Judge